OPINION OF THE COURT
 

 Bellacosa, J.
 

 This appeal, on a grant of leave to defendant by a Judge of this Court, presents a narrow question. The case, which has generated a constitutional double jeopardy claim, has traveled an unusual procedural path. At defendant’s first trial, the court reserved decision on defendant’s motion for a mistrial based on prosecutorial misconduct. The case proceeded to a jury verdict of guilt, which was subsequently vacated by the trial court. Defendant next moved on double jeopardy grounds to dismiss the indictment and prevent his retrial. This motion was denied and defendant was again found guilty by a second jury of criminal sale and possession of a controlled substance in the third degree. We now affirm the order of the Appellate Division upholding that conviction.
 

 Particularly in the procedural circumstances pertinent to this case, constitutional double jeopardy principles are not implicated. The corrective action for prosecutorial trial mis
 
 *91
 
 conduct should ordinarily not vary whether a verdict is nullified by a trial court or by an appellate court. The usual, complementing relief in such circumstances includes the allowance of a retrial. Some prosecutorial error may be so egregious or provocative as to warrant the interposition of the double jeopardy bar, even when no mistrial is granted, but that is not this case
 
 (see, e.g., Matter of Potenza v Kane,
 
 79 AD2d 467, 470;
 
 compare, Matter of Randall v Rothwax,
 
 78 NY2d 494). Such egregious cases might evoke an exceptional circumstances approach to the general remedial relief which allows for retrial, but we leave that question for another day and an appropriate case. We hold here only that retrial was appropriate to this procedural setting.
 

 L
 

 Defendant’s prosecution arose out of a standard police narcotics buy and bust in lower Manhattan. At the time of arrest, no "buy money” or drugs were found on the defendant. At the first trial, defendant was tried with a codefendant, who took the stand and offered an alibi defense. On cross-examination, the prosecutor asked the codefendant whether he had told the arresting officer, the arraignment Judge, the Assistant District Attorney, or anyone at the District Attorney’s office, "what happened” when he was arrested. The prosecutor pressed the codefendant about whether he had asserted to anyone that he did not "commit the crime.” The Trial Judge sustained defendants’ objections and cautioned the jury about this impermissible line of inquiry. The prosecutor, stating that he did not "understand the relevance” of the objections, persisted. After the Trial Judge firmly admonished the prosecutor and explained the ruling, defendant-appellant and his codefendant made a motion for a mistrial on the ground that the prosecutor’s questions violated their Fifth Amendment rights
 
 (see, People v Conyers,
 
 52 NY2d 454). The Trial Judge reserved decision and the first trial continued.
 

 During summation, the prosecutor stated on three occasions that the facts were "uncontroverted.” The Trial Judge sustained an objection to the word "uncontroverted,” stating that "[i]t is not a good word to use” because it "[g]ives rise to an implication that is improper.” The defendants renewed their motion for a mistrial, which was denied. However, the court noted that it was still technically holding in reserve the earlier mistrial motion, made after cross-examination of the codefendant.
 

 
 *92
 
 After the jury rendered its verdict of guilt against both defendants, the Trial Judge acted. The court vacated the verdict because of the persistent prosecutorial misconduct in the cross-examination of the codefendant relating to postarrest silence and the prosecutor’s use of the word "uncontroverted” in summation.
 

 However, in denying defendant-appellant’s ensuing motion to dismiss the indictment on double jeopardy grounds, the Trial Judge stated that the prosecutorial misconduct was not intentional and was motivated by a lack of understanding. Defendant was retried alone and was again convicted. The Appellate Division affirmed the conviction, also rejecting defendant-appellant’s double jeopardy claim.
 

 Defendant’s central assertion is that his second trial transgressed constitutional double jeopardy principles, even though the verdict in the first trial was ultimately vacated by the trial court, because the prosecutor’s misconduct in the first trial left him with no alternative but to move for a mistrial. Appellant’s proposed rule — acknowledged as a significant change in approach — would bar retrials, even though the mistrial motion was not resolved and the case proceeded to verdict before the selected jury, whenever the trial conduct of prosecutors is grossly and fundamentally prejudicial to defendant’s fair trial rights. The People essentially urge adoption of the Federal rule, under which no double jeopardy bar drops unless the prosecutorial misconduct is intended to provoke a mistrial
 
 (Oregon v Kennedy,
 
 456 US 667). In the context of this case, we need not depart from the general analytical mode for deciding such cases, because under any theory in this case defendant is not entitled to double jeopardy relief.
 

 IL
 

 The Double Jeopardy Clause protects a defendant’s right, "after the jury has been impaneled and sworn, * * * ' "to have [the] trial completed by a particular tribunal” ’ ”
 
 (People v Catten,
 
 69 NY2d 547, 554). Generally, this constitutional right is not implicated where, as here, a defendant receives what the particular right confers, i.e., a jury verdict by the "particular tribunal,” even though that is subsequently vacated.
 

 In
 
 Matter of Randall v Rothwax
 
 (78 NY2d 494,
 
 supra),
 
 a quite different procedural context, to be sure, we noted:
 

 "The trial court’s candid acknowledgement of in
 
 *93
 
 advertent error and attempt to rectify the harm done, by vacatur of the guilty plea and judgment of conviction on which the plea was based did not and could not restore the defendant to the status quo ante.
 
 Defendant’s right to have the particular deliberating jury resolve his fate was forever lost.
 
 The vacatur of a guilty plea
 
 in this circumstance
 
 is not at all similar to other typical relief sought by and granted to defendants from trial or appellate courts, which permit further proceedings on an indictment”
 
 (id.,
 
 at 497 [citations omitted; emphasis added]).
 

 Here, defendant received the particular right he was entitled to — a verdict from the particular jury.
 

 Defendant argues, nevertheless, that this postverdict vacatur of his conviction, based on particularized prosecutorial trial malfeasance, should be treated, for double jeopardy purposes, as the kind of mistrial that should be granted when defendant is left with no alternative but to seek that relief. We disagree. The vacatur that occurred here is more analogous to a reversal on appeal for relatively ordinary trial error. In such instances, the double jeopardy bar to retrial should not attach and the correct and proportionate remedy should allow for retrial. Indeed, for appeal corrective action purposes, the Criminal Procedure Law mandates retrial (CPL 470.20 [1]; 470.30 [1]). We are satisfied that since the vacatur of this jury verdict is comparable to relief that would be granted by appellate courts for a trial error of similar gravity, there should be no general double jeopardy bar here.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., Smith and Levine concur.
 

 Order affirmed.