Matter of McNair v McNamara (2022 NY Slip Op 03825)

Matter of McNair v McNamara

2022 NY Slip Op 03825

Decided on June 10, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 10, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, CURRAN, AND BANNISTER, JJ.

313 OP 21-01638

[*1]IN THE MATTER OF BRANDON MCNAIR, PETITIONER,
v
SCOTT D. MCNAMARA AND HON. MICHAEL L. DWYER, RESPONDENTS. 

REBECCA L. WITTMAN, UTICA, FOR PETITIONER. 
SCOTT D. MCNAMARA, DISTRICT ATTORNEY, UTICA (EVAN A. ESSWEIN OF COUNSEL), FOR RESPONDENT SCOTT D. MCNAMARA.

 Proceeding pursuant to CPLR article 78 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department pursuant to CPLR 506 [b] [1]) to prohibit a certain criminal prosecution. 
It is hereby ORDERED that said petition is unanimously granted without costs and judgment is granted in favor of petitioner as follows:
"It is ADJUDGED that respondents are prohibited from retrying petitioner on Indictment No. 2020-185."
Memorandum: Petitioner commenced this original CPLR article 78 proceeding in this Court seeking a writ of prohibition barring his retrial on the ground of double jeopardy. We agree with petitioner that the petition should be granted.
Petitioner was charged by an indictment with various weapons offenses, and a jury trial commenced before County Court (Dwyer, J.) on November 1, 2021. The jury was selected and sworn, and three witnesses testified. The next day was Election Day and the trial was recessed. On the morning of November 3, Judge Dwyer's secretary notified petitioner's counsel that the Judge had a cold, he wanted to make sure it was not COVID-19, he would not be in that day, and the jury would be sent home. Petitioner's counsel was notified several days later that the matter would be scheduled for a retrial on November 15.
At a court appearance on November 12, the parties and the court made a record of the circumstances that had occurred since the start of the original trial. Judge Dwyer explained that, on Election Day, he had become ill with "a bad head cold, a bad chest cold, and . . . chills." He contacted his physician, who scheduled him for a COVID-19 test the following day. Early in the morning of November 3, the Judge contacted the Administrative Judge in his Judicial District, who instructed him not to return to the courthouse until he had received a negative COVID-19 test result. Judge Dwyer had the COVID-19 test that afternoon and was told he would have the results in three to five days. The Judge explained that "for that reason, there was a de facto mistrial because [he] was not able to come in." He received a negative COVID-19 test result two days after his test.
The Judge stated that he believed that a mistrial was necessary because it was physically impossible for him to come to court and proceed with the trial. He also noted that, when the jury was selected, he had told them that the trial would conclude on November 3 or, at the latest, the following day. When petitioner's counsel objected and suggested that the trial could have been postponed or a different judge could have stepped in, the court responded "[t]hat is not possible," reasoning that another judge would not have been familiar with the testimony that had already [*2]been presented. The court clarified that the mistrial was declared as of November 3, the day the jury was sent home.
Initially, Scott D. McNamara (respondent) correctly acknowledges that double jeopardy is a ground for obtaining the remedy of a writ of prohibition. "[W]hen a defendant is about to be prosecuted in violation of his [or her] constitutional right against double jeopardy, . . . the harm that he [or she] would suffer—prosecution for a crime for which he [or she] cannot constitutionally be tried—is so great and the ordinary appellate process so inadequate to redress that harm, that prohibition will lie to raise the claim" (Matter of Rush v Mordue, 68 NY2d 348, 354 [1986]; see People v Michael, 48 NY2d 1, 7 [1979]). Respondent also correctly acknowledges that jeopardy had attached at the time the court declared a mistrial (see CPL 40.20 [1]; 40.30 [1] [b]; People v Ferguson, 67 NY2d 383, 387-388 [1986]).
"[T]he Double Jeopardy Clause protects criminal defendants from multiple prosecutions for the same offense" (Matter of Gorghan v DeAngelis, 7 NY3d 470, 473 [2006]). "[W]hen a mistrial is granted over the defendant's objection or without the defendant's consent, double jeopardy will, as a general rule, bar retrial" (Matter of Davis v Brown, 87 NY2d 626, 630 [1996]). "However, the right to have one's case decided by the first empaneled jury is not absolute, and a mistrial granted as the product of manifest necessity will not bar a retrial" (id.; see Hall v Potoker, 49 NY2d 501, 505 [1980]; Michael, 48 NY2d at 9; see also CPL 280.10 [3]). A court "must exercise sound discretion to assure that, taking all relevant circumstances into account, there was manifest necessity for the declaration of a mistrial without defendant's consent" (Matter of Enright v Siedlecki, 59 NY2d 195, 200 [1983]; see Michael, 48 NY2d at 9).
We agree with petitioner that there was no manifest necessity for the mistrial, and the court therefore abused its discretion in granting it sua sponte (see Michael, 48 NY2d at 10-11). The record establishes that the court did not consider the alternatives to a mistrial, such as a continuance (see id. at 9-11) or substitution of another judge (see People v Thompson, 90 NY2d 615, 616-617, 621 [1997]; see also People v Hampton, 21 NY3d 277, 287 [2013]). "[I]f the judge acts so abruptly as to not permit consideration of the alternatives . . . or otherwise acts irrationally or irresponsibly . . . or solely for convenience of the court and jury . . . , retrial will be barred" (Enright, 59 NY2d at 200; see Ferguson, 67 NY2d at 388; Michael, 48 NY2d at 9-11). "The court has the duty to consider alternatives to a mistrial and to obtain enough information so that it is clear that a mistrial is actually necessary" (Ferguson, 67 NY2d at 388). The declaration of a mistrial on November 3 was not necessary. At that time, the Judge knew he was scheduled to have a COVID-19 test that afternoon. If the result was negative, he could have returned to the courtroom as soon as he was provided with the result. If it was positive, he may have been out for a longer time, but could have reassessed the situation after receiving the test results. It was an abuse of discretion to grant a mistrial without the consent of petitioner and without considering the available alternatives (see Michael, 48 NY2d at 11; cf. Hall, 49 NY2d at 506-507).
Entered: June 10, 2022
Ann Dillon Flynn
Clerk of the Court